IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | 8:05CV575 |
| vs. ) | |
| ) | ORDER |
| **MIKE'S TRAIN HOUSE, INC. d/b/a/** ) | |
| **M.T.H. ELECTRIC TRAINS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

This matter is before the court on PLAINTIFF'S MOTION TO QUASH NON-PARTY SUBPOENAS AND OBJECTIONS THERETO [30]. Plaintiff has complied with NECivR 7.1(i). Having considered defendant's response [34], I find that the motion should be denied.

### BACKGROUND

Plaintiff ("UPRR") alleges in its Complaint that it is the largest railroad in North America and, in addition to providing railroad transportation services, is engaged in the business of selling model trains, railroad memorabilia, souvenirs, and other products through its company store. Defendant ("MTH") is in the business of marketing and selling model trains.

In this lawsuit, UPRR alleges that MTH is liable for trademark infringement, trademark dilution, unfair competition, false designation of origin, false description and representation, and violations of the Nebraska Uniform Deceptive Trade Practices Act, based on MTH's promotion, marketing, distribution and sale of model trains and products bearing UPRR's "Union Pacific," "Southern Pacific" and "Western Pacific" trademarks. MTH denies any liability and affirmatively alleges that all of UPRR's claims are equitably barred; the dilution claims are barred in whole or in part by the retroactivity doctrine; the trademarks have been abandoned through uncontrolled use by

one or more third parties and/or through non-use by UPRR; the trademarks are functional, generic, invalid and unenforceable; MTH's use of the alleged trademarks is fair use; and one or more of UPRR's federal trademark registrations was fraudulently obtained or is otherwise invalid.

By counterclaim, MTH alleges that it and other like businesses have, for decades, and with UPRR's knowledge and acquiescence, manufactured and sold model trains and model train-related accessories bearing the names "Union Pacific," "Southern Pacific" and "Western Pacific." In December 2002, UPRR announced that it was, "for the first time in the 140 year history of the company," requiring that all model railroad manufacturers obtain a license agreement from UPRR and pay royalties to UPRR for the use of its alleged marks. MTH seeks a declaratory judgment in its favor on all of UPRR's claims and cancellation of UPRR's trademark registrations.

On March 24 and 27, 2006, pursuant to Fed. R. Civ. P. 45 and NECivR 45.1[1], MTH filed notices of intent to serve subpoenas duces tecum on 55 nonparties for the production on or before

---

[1]NECivR 45.1 provides:
**Subpoenas to Nonparties.**
- **(a) Notice to Adverse Party.** No subpoenas for production or inspection may be issued for service on a nonparty without giving the adverse party at least ten (10) days notice before the subpoena will be issued. The notice shall state the name and address of the nonparty who will be subpoenaed, the documents or items to be produced or inspected, the time and place for production or inspection, and the date on which the subpoena will be issued.
- **(b) Objections.** After receipt of the notice, the adverse party shall have five (5) days to serve written objections to the subpoena on the party who gave notice that a subpoena would be issued. The adverse party must specifically identify the grounds for the objections. No subpoena shall be issued for documents or premises whose inspection or production is contested under this rule until the court has resolved the objection. Nothing in this rule affects the availability of objections set forth in Federal Rule of Civil Procedure 45(c) and (d).
- **(c) Hearing.** The party who gave notice that a subpoena would be issued may move for a hearing on unresolved objections. Upon hearing after notice to all parties, the court may order that the subpoena be issued or not issued, or that discovery proceed in a different manner or subject to a protective order. The court may also, in its discretion, award expenses.
- **(d) Effect of Failure to Object.** A failure to object to issuance of a subpoena to a nonparty shall not preclude an adverse party from moving for a protective order under Federal Rule of Civil Procedure 26(c).

April 14 and 21, 2006, of:

    1.    All documents, things and e-mails that you sent to Plaintiff.

    2.    All documents, things and e-mails that Plaintiff sent to you.

    3.    All documents, e-mails, notes, diary entries and memoranda concerning any communication that you had with Plaintiff.

    4.    All catalogues, mailings, flyers, newsletters, promotional materials, letters, advertisements, and brochures that were distributed or sold by you or which you caused to be distributed or sold which contain the name "Union Pacific" alone or in combination with any other word(s), term(s) and/or design(s).

    5.    All catalogues, mailings, flyers, newsletters, promotional materials, letters, advertisements, and brochures that were distributed or sold by you or which you caused to be distributed or sold which contain the name "Western Pacific" alone or in combination with any other word(s), term(s) and/or design(s).

    6.    All catalogues, mailings, flyers, newsletters, promotional materials, letters, advertisements, and brochures that were distributed or sold by you or which you caused to be distributed or sold which contain the name "Southern Pacific" alone or in combination with any other word(s), term(s) and/or design(s).

    7.    A photograph of each model train, toy train, model train car, toy train car, decal, building or other model or toy railroad accessory, supply or product that you have sold or distributed (or caused to be sold or distributed) that bears the name "Union Pacific" alone or in combination with any other word(s), term(s) and/or design(s), and documents sufficient to identify the date when you first distributed or sold each such product.

    8.    A photograph of each model train, toy train, model train car, toy train car, decal, building or other model or toy railroad accessory, supply or product that you have sold or distributed (or caused to be sold or distributed) that bears the name "Western Pacific" alone or in combination with any other word(s), term(s) and/or design(s), and documents sufficient to identify the date when your first distributed or sold each such product.

    9.    A photograph of each model train, toy train, model train car, toy train car, decal, building or other model or toy railroad accessory, supply or product that you have sold or distributed (or caused to be sold or distributed) that bears the name "Southern Pacific" alone or in combination with any other word(s), term(s) and/or design(s), and documents sufficient to identify the date when you first distributed or sold each such product.

    10.    All documents and e-mails that refer to Defendant or Defendant's model railroad products.

    11.    All documents, invoices and purchase orders for any products that bear the name "Union Pacific," alone or in combination with any other word(s), term(s) and/or design(s), that were sold or distributed (directly or indirectly) to Plaintiff.

    12.    All documents, invoices and purchase orders for any products that bear the

name "Southern Pacific," alone or in combination with any other word(s), term(s) and/or design(s), that were sold or distributed (directly or indirectly) to Plaintiff.

13. All documents, purchase orders and invoices for any products that bear the name "Western Pacific," alone or in combination with any other word(s), term(s) and/or design(s), that were sold or distributed (directly or indirectly) to Plaintiff.

14. For each year that you sold or distributed (or caused to be sold or distributed) any product bearing the name "Union Pacific," alone or in combination with any other word(s), term(s) and/or design(s), documents sufficient to show the number of units sold or distributed.

15. For each year that you sold or distributed (or caused to be sold or distributed) any product bearing the name "Southern Pacific," alone or in combination with any other word(s), term(s) and/or design(s), documents sufficient to show the number of units sold or distributed.

16. For each year that you sold or distributed (or caused to be sold or distributed) any product bearing the name "Western Pacific," alone or in combination with any other word(s), term(s) and/or design(s), documents sufficient to show the number of units sold or distributed.

## LEGAL ANALYSIS

UPRR asks that the nonparty subpoenas be quashed

- because MTH did not comply with NECivR 45.1(a), and

- because the subpoenas seek irrelevant information, are unduly burdensome, and request production that is unreasonably cumulative and obtainable "from a source that is more convenient, less burdensome, and less expensive," i.e., from UPRR itself.

### *Non-Compliance with NECivR 45.1*

UPRR advises that MTH served the subpoenas on March 27, 2006 without giving UPRR at least 10 days notice, as required by NECivR 45.1(a). On the other hand, MTH advises that UPRR did not serve its written objections within five days of receiving notice, as required by NECivR 45.1(b). While it would have been better for the parties to comply with NECivR 45.1(b), responsive documents were not to be produced until April 14 or 21, 2006, giving UPRR adequate time to lodge any objections.

*Standing and Jurisdiction*

In response, MTH advises that the recipients of the subpoenas are businesses publicly identified on UPRR's web site as licensees of UPRR's marks. No actual recipient has filed a motion to quash, and some of the third parties have fully responded to their subpoenas. In any event, all of the subpoenas were issued in other districts[2], and this court does not have jurisdiction to quash a subpoena issued outside the District of Nebraska.

In general, "[a] motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995); *see also Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689 (N.D. Ill. 1983); *Minnesota Sch. Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627 (D. Minn. 1999); *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004).

No showing has been made that UPRR has some kind of "personal right or privilege" in the information requested. Essentially, UPRR complains that it would be inconvenient for the nonparties to comply with MTH's subpoenas. UPRR has not shown that the recipients are somehow unable to assert their own interests in this matter.

Turning to the issue of jurisdiction, Rule 45 clearly delegates the responsibility of enforcing, quashing, or modifying subpoenas to "the court by which [the] subpoena was issued." Fed. R. Civ.

---

[2]Fed. R. Civ. P. 45(a)(2)(C) provides that a subpoena for production and inspection must issue "from the court for the district where the production or inspection is to be made." I note that none of the nonparties listed in MTH's notices [26] and [27] have Nebraska addresses.

-5-

P. 45(c)(3)(A). This court does not have the authority to quash subpoenas that were issued outside the District of Nebraska.

Finally, the court finds that the circumstances of this incident would make an award of expenses unjust and declines to award costs or fees to either party.

## ORDER

In summary, this court does not have the authority to modify the subpoenas issued by other district courts. In addition, UPRR lacks standing to file a motion for protective order on behalf of any of the nonparty recipients. For these reasons,

**IT IS ORDERED** that PLAINTIFF'S MOTION TO QUASH NON-PARTY SUBPOENAS AND OBJECTIONS THERETO [30] is denied.

> Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal. *See* NECivR 72.2(d).

**DATED April 25, 2006.**

                                              **BY THE COURT:**

                                              **s/ F.A. Gossett**
                                              **United States Magistrate Judge**