# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | 8:05CV575 |
| vs. | ) ) ) | ORDER |
| MIKE'S TRAIN HOUSE, INC. d/b/a/ M.T.H. ELECTRIC TRAINS, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's Motion to Compel [37]. The parties have complied with NECivR 7.1(i). Having carefully considered the materials submitted by the parties (Filings 37, 38, 39, 55, 56, 64 and 65), I find that the motion should be granted in part, as discussed below.

## I. BACKGROUND

Plaintiff ("UPRR") alleges that the defendant ("MTH") is liable for trademark infringement, trademark dilution, unfair competition, false designation of origin, false description and representation, and violations of the Nebraska Uniform Deceptive Trade Practices Act, based on MTH's promotion, marketing, distribution and sale of model trains and products bearing UPRR's "Union Pacific," "Southern Pacific" and "Western Pacific" trademarks. MTH denies any liability and affirmatively alleges that all of UPRR's claims are equitably barred; the dilution claims are barred in whole or in part by the retroactivity doctrine; the trademarks have been abandoned through uncontrolled use by one or more third parties and/or through non-use by UPRR; the trademarks are functional, generic, invalid and

unenforceable; MTH's use of the alleged trademarks is fair use; and one or more of UPRR's federal trademark registrations was fraudulently obtained or is otherwise invalid.

By counterclaim, MTH alleges that it and other like businesses have, for decades, and with UPRR's knowledge and acquiescence, manufactured and sold model trains and model train-related accessories bearing the names "Union Pacific," "Southern Pacific" and "Western Pacific." In December 2002, UPRR announced that it intended to require that all model railroad manufacturers obtain a license agreement from UPRR and pay royalties to UPRR for the use of its alleged marks. MTH seeks a declaratory judgment in its favor on all of UPRR's claims and cancellation of UPRR's trademark registrations.

UPRR filed similar actions in this district, i.e., *Union Pac. R.R. Co. v. Lionel, L.L.C.* (Case No. 8:04CV249)[1] and *Union Pac. R.R. Co. v. Nils Huxtable* (Case No. 8:05CV296), alleging that Lionel and Huxtable are liable to it for their use of UPRR's registered trademarks.

Other document requests pertain to the operation and/or records of the Union Pacific Railroad Company museum. UPRR has operated the museum since 1939. William Kratville and Don Snoddy are former employees of the museum. Mr. Snoddy was in charge of the

---

[1] On November 15, 2004, Lionel L.L.C. filed a voluntary petition for relief under title 11 of Chapter 11 of the U.S. Code in the United States Bankruptcy Court for the Southern District of New York, *In re Lionel L.L.C., et al.*, Case No. 04-17324 (BRL). Consequently, the Lionel case was transferred from this court to the United States Bankruptcy Court pursuant to NEGenR 1.5(a)(1) and 28 U.S.C. § 157. The court obtained access to the Bankruptcy Court's docket sheet and documents through the PACER Service Center, http://pacer.psc.uscourts.gov, which shows that UPRR's trademark claims against Lionel are pending as Claim No. 66. The debtors' Objection to UPRR's Proof of Claim No. 66 is set for a status conference before the bankruptcy judge on June 27, 2006.

museum for 18 years and Mr. Kratville worked in the museum from 1991 through December 2005. They both fielded inquiries from model railroaders who were seeking photographs, drawings, plans and various other things related to UPRR's trains.

On March 16, 2006, MTH served its First Set of Requests for the Production of Documents and Things (Requests Nos. 1-69). Although UPRR initially objected to producing certain documents related to or previously produced in the *Lionel* and *Huxtable* cases, it agreed to amend its responses to most of these requests and will produce "responsive, non-privileged documents in its possession, custody and control." Filing 55, UPRR's Brief at p.3, n.1. Based upon this representation, the Motion to Compel will be denied as moot with respect to Document Requests Nos. 19, 20, 21, 22, 25, 26, 27, 40 and 49.

The document requests remaining at issue are Nos. 39, 42, 43, 46, 47, 48, 52, 53, 57, 58, 60, 61, 65 and 66.

## II.  LEGAL ANALYSIS

The scope of discovery in federal civil actions is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides:

> **(b) DISCOVERY SCOPE AND LIMITS**. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> **(1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For

> good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Pursuant to Rule 26(b) (2), the court may limit discovery if the court determines that:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2).

The court realizes that the scope of discovery in this case will be unusually broad due to defenses and claims recalling the unlicensed use of UPRR's alleged trademarks by numerous model railroad manufacturers for over 100 years.  UPRR is a historic company, and the issues raised in this lawsuit will require the examination of UPRR's conduct over that 100-year period.

That said, the court finds that the following document requests are overbroad, in that they are not limited to any particular topics or vendors, or specific divisions or offices of UPRR:

> REQUEST NO. 42:  Photographs of all model trains or toy trains bearing Plaintiff's Marks.

REQUEST NO. 43: All magazines that cover the model railroad industry, including *Model Railoader*, *Model Railroad Craftsman* and the like.

REQUEST NO. 46: All documents and things that were sent by a person at the Union Pacific museum in response to a request for anything from a member of the public.

REQUEST NO. 47: All correspondence that was sent to any person by William Kratville.

REQUEST NO. 48: All correspondence that was sent to any person by Don Snoddy.

REQUEST NO. 52: All documents concerning communications sent to or received from any person about photographs, drawings, plans, colors, measurements, or any other detail of any and all Union Pacific buildings and structures.

REQUEST NO. 53: All documents concerning communications sent to or received from model train or toy train manufacturers about photographs, drawings, plans, colors, measurements, or any other detail of any and all Union Pacific buildings and structures.

REQUEST NO. 57: All documents concerning the replication of Plaintiff's trains, buildings, accessories, including the Union Pacific name and other alleged trademarks by any person.

REQUEST NO. 58: All documents concerning the replication of Plaintiff's trains, buildings, accessories, including the Union Pacific name and other alleged trademarks by any model train or toy train manufacturer.

REQUEST NO. 60: Documents sufficient to identify each model train or toy train that was purchased by Plaintiff or at the direction of a current or former officer of Plaintiff, including sales receipts.

REQUEST NO. 61: A copy of every cancelled check that was written by Union Pacific to any hobby store, including Trainmen's in Omaha, Nebraska.

UPRR's objections based on overbreadth are sustained as to these requests.

UPRR's objections based on relevance, however, are overruled. It is quite likely that responsive documents would include documents relevant to the claims and defenses now at issue. MTH may serve amended requests that are limited to particular topics or vendors, or specific divisions or offices of UPRR, for documents or things that are in UPRR's actual possession.

In **Request No. 39**, defendants ask for "[a]ll communications between any attorney acting on behalf of Plaintiff and any attorney acting on behalf of Lionel Corporation that refers to Union Pacific or that concerns the litigation of the trademark dispute or the settlement of the trademark dispute between Plaintiff and Lionel pending in the District of Nebraska." I find that this request seeks relevant information; however, I share UPRR's concern that any responsive documents would include confidential or privileged information. I believe that UPRR should be required to produce responsive non-privileged documents subject to the terms of the Protective Order entered on May 2, 2006 (Filing 42). As to any claim of privilege, the parties must comply with paragraph 5 of the Initial Progression Order (Filing 18).

Finally, I find that UPRR's objection based on overbreadth should be sustained as to **Requests Nos. 65 and 66**, which request all correspondence of any kind between UPRR and Lionel.

### III.  ORDER

As discussed herein,

**IT IS ORDERED** that the Motion to Compel is granted in part, and denied in part, as follows:

1. The Motion is denied as moot with respect to Document Requests Nos. 19, 20, 21, 22, 25, 26, 27, 40 and 49.

2. The Motion is denied as to Document Requests Nos. 65 and 66.

3. The Motion is granted, in part, as to Document Requests No. 39. UPRR shall produce responsive non-privileged documents subject to the terms of the Protective Order entered on May 2, 2006 (Filing 42). As to any claim of privilege, the parties must comply with paragraph 5 of the Initial Progression Order (Filing 18).

4. The Motion is granted, in part, as to Document Requests Nos. 42, 43, 46, 47, 48, 52, 53, 57, 58, 60 and 61. Although the requests are overbroad, MTH may serve amended requests that are limited to particular divisions or offices of UPRR and for documents or things that are in UPRR's actual possession.

5. The circumstances of this discovery dispute would make an award of expenses unjust and the court declines to award costs or fees to either party. *See* Fed. R. Civ. P. 37(a)(4)(B).

**DATED June 1, 2006 .**

                **BY THE COURT:**

                **s/ F.A. Gossett**
                **United States Magistrate Judge**