# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

**UNION PACIFIC RAILROAD COMPANY,** )
)
        **Plaintiff,** )
)     **8:05CV575**
    **vs.** )
)     **ORDER**
**MIKE'S TRAIN HOUSE, INC. d/b/a/** )
**M.T.H. ELECTRIC TRAINS,** )
)
        **Defendant.** )

      This matter is before the court on PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND/OR MOTION TO QUASH DEFENDANT'S NOTICES TO TAKE DEPOSITIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS [82]. The matter has been fully briefed.

      To date, the defendant has served plaintiff with approximately 400 requests for production of documents, in addition to serving interrogatories, third-party subpoenas, and deposition notices. Based on the volume of information sought, plaintiff contends that the court must enter a protective order to "reign in the scope of defendant's unrestrained discovery," Filing 84 at p.7, by quashing defendant's

- First through Sixth Set of Requests for Production;
- Notice of Taking of Deposition of John C. Kenefick;
- Notice of Taking of Deposition of Mary McAuliffe; and
- Notice of Taking of Deposition of Union Pacific Railroad (Rule 30(b)(6))

      Having reviewed the 444 pages of materials submitted by the parties (251 by plaintiff, 193 by defendant), I find that the motion should be denied.

## DISCUSSION

**A. Scope of Discovery**

The scope of discovery in federal civil actions is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides:

> **(b) DISCOVERY SCOPE AND LIMITS.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> **(1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Pursuant to Rule 26(b)(2), the court may limit discovery if the court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2).

"The very purpose of discovery is to force a litigant to disclose relevant material in its files so that its opponent can press a case, using whatever legal or factual theory the opponent sees fit to

use." *Pro-Football, Inc. v. Harjo*, 191 F. Supp. 2d 77, 80 (D.D.C. 2002). Thus, "relevance, in discovery matters, is broadly and liberally construed." *In re PE Corporation Securities Litigation*, 221 F.R.D. 20, 23 (D. Conn. 2003) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. *Id.*

### B. The Claims and Defenses Asserted by the Parties

As noted in previous orders, the complaint alleges defendant ("MTH") is liable for trademark infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution pursuant to 15 U.S.C. § 1125(c); common law trademark infringement; unfair competition; and violations of the Nebraska Uniform Deceptive Trade Practices Act. These claims are based on MTH's promotion, marketing, distribution and sale of model trains and products bearing UPRR's "Union Pacific," "Southern Pacific" and "Western Pacific" trademarks.

MTH denies liability and affirmatively alleges that plaintiff's claims are equitably barred by laches, acquiescence, waiver, estoppel and unclean hands; the dilution claims are barred by the retroactivity doctrine; the trademarks have been abandoned through uncontrolled use by one or more third parties and/or through non-use by plaintiff; the trademarks are functional, generic, invalid and unenforceable; MTH's use of the alleged trademarks is fair use; and one or more of the federal trademark registrations was fraudulently obtained or is otherwise invalid. By counterclaim, MTH seeks the cancellation of plaintiff's marks, alleging the trademarks were issued as the result of plaintiff's fraudulent conduct and omissions and that the marks have been abandoned or become generic.

In addition to considering the arguments and authorities cited by the parties, the court has conducted independent research on the elements of the claims and defenses, and has reviewed the pattern jury instructions[1] typically used in cases of this nature, in an attempt to identify what kind of information may be considered relevant to the parties' claims and defenses.

In general, to prevail at trial, the plaintiff will have to prove that it owns the trademarks and that the defendant infringed them by using the marks without the plaintiff's consent in a manner likely to cause confusion among ordinary purchasers as to the source of the goods. *See* 15 U.S.C.A. §§ 1114 (registered marks) & 1125 (unregistered marks). In determining whether there is or will be likelihood of confusion, the finder of fact may consider the degree of similarity between the marks in question; the intent of the defendant in using the mark, i.e., whether there was an intent to confuse; the manner and method in which the marks were used; the degree of care likely to be used by purchasers; and other factors about the product that would tend to reduce any tendency to confuse the purchaser as to the source of origin of the product.

To prevail on a claim based on "false designation of origin," the plaintiff must show that the defendant made commercial use of any word, term, name, or symbol, or combination thereof that is likely to cause confusion as to the origin of the goods, the defendant's connection with plaintiff, or whether plaintiff endorsed or approved the goods.

"Trademark dilution" is "the lessening of the capacity of a famous mark to identify and distinguish goods or services regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties; or (2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127. In order to prove trademark dilution, the plaintiff must establish that: (1) its name

---

[1] *I.e.*, 3A KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS (CIVIL) ch. 159 (5th ed. 2001).

are famous trademarks; (2) defendant's use began after the marks had become famous; (3) defendant's use "causes dilution" of the trademarks; and (4) defendant's use is commercial and in commerce. A claim under 15 U.S.C. § 1125(c)(1) requires proof of actual dilution. *See Everest Capital Limited v. Everest Funds Management, L.L.C.*, 393 F.3d 755, 763 (8th Cir. 2005).

The defenses asserted by MTH will require consideration of factors relevant to abandonment, fair use, acquiescence, equitable considerations, and the validity or enforceability of the marks themselves.

In determining whether Lanham Act claims have been asserted in a timely manner, courts apply the equitable doctrine of laches because the Lanham Act does not contain a statute of limitations. *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 962 (W.D. Mich. 2004). The doctrine of laches requires proof of unreasonable delay by the party seeking to enforce its trademark rights and material prejudice to the alleged infringer. *Id.*

"Acquiescence arises as a defense to trademark infringement in 'cases where the trademark owner, by affirmative word or deed, conveys its implied consent to another.' *TMT North America,* [*Inc. v. Magic Touch GmbH,* 124 F.3d 876, 885 (7th Cir. 1997)] (quotation omitted). Acquiescence merges with *laches* when it is based on silence. *Piper Aircraft* [*Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 933 (7th Cir. 1984)]." *Trans Union v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1041 (N.D. Ill. 2001).

"[I]n order to establish estoppel, the party asserting the defense must show affirmative misconduct or intentional silence 'amounting to a virtual abandonment of the trademark.'" *Bliss Clearing Niagara*, 339 F. Supp. 2d at 962 *(*quoting *Kellogg Co.* [*v. Exxon Corp.,* 209 F.3d 562, 574 (6th Cir. 2000)]). Abandonment requires proof of the intentional non-use of a trademark and results

in relinquishment of the trademark rights against the world.  *See* 15 U.S.C. § 1127; *e.g., Trans Union,* 142 F. Supp. 2d at 1040.

The fair use defense applies if the defendant's use was "a use, otherwise than as a mark, ... which is descriptive of and used fairly and in good faith only to describe the goods of such party." 15 U.S.C. § 1115(b)(4).

> "Under the doctrine of 'fair use,' the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,* 270 F.3d 298, 319 (6th Cir. 2001). "[F]air use permits others to use a protected mark to describe aspects of their own goods." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir. 1995).  In considering a fair use defense, a court should consider whether the defendant has used the mark:  (1) in its descriptive sense; and (2) in good faith.  *ETW Corp. v. Jireh Publ'g, Inc.,* 332 F.3d 915, 920 (6th Cir. 2003) (citing *Victoria's Secret Stores v. Artco Equip. Co.,* 194 F. Supp. 2d 704, 724 (S.D. Ohio 2002)).

*Bliss Clearing Niagara*, 339 F. Supp. 2d at 962-63.  This defense

> "... is based on the principle that no one should be able to appropriate descriptive language through trademark registration." *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 951 (7th Cir. 1992).  "To prevail on the fair use defense, the defendant must establish that its use of a registered 'term or device' is 'otherwise than as a trade or service mark,' that the term or device is 'descriptive of' the defendant's goods or services and that the defendant is using the term or device 'fairly and in good faith only to describe to users' those goods and services."  *Id.* (*quoting* 15 U.S.C. § 1115(b)(4)).

*Trans Union*, 142 F. Supp. 2d at 1039.

### C.  Defendant's Requests for Production

Fed. R. Civ. P. 34(a) provides that "[a]ny party may serve on any other party a request (1) to produce ... any designated documents ... which are in the possession, custody or control of the party upon whom the request is served."  "Moreover, 'federal courts have consistently held that documents

are deemed to be within the "possession, custody or control" for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand.'" *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995)).  Production may be required if the party has the practical ability to obtain the documents from another, irrespective of any legal entitlement to the documents. *Id.*

Here, the plaintiff demands that all of defendant's document requests be quashed. At the time plaintiff's motion was filed, the defendant had served six sets[2] which, together, contained over 400 requests. Set No. 1, served on March 16, 2006 was the subject of previous discovery motions. Set No. 2 was served on March 17, 2006. The record strongly suggests that the parties reached an agreement as to Set No. 2. Set No. 3 was served on March 31, 2006; Set No. 4 on May 5, 2006; Set No. 5 on May 12, 2006; and Set No. 6 on May 18, 2006. The instant Motion for Protective Order was filed on June 23, 2006.

Basically, plaintiff now complains of the time and expense it will take to respond to defendant's requests, and contends that the cost of producing the information sought exceeds its probative value. The plaintiff's proposed solution is that <u>all</u> of the requests be quashed, including the requests to which it already agreed to provide responsive documents. In defendant's brief, counsel makes the professional representation that the parties resolved the issue of locating responsive e-mails prior to plaintiff filing this motion; the defendant agreed to identify individuals whose computers plaintiff will search for responsive e-mails.

---

[2] As of August 9, 2006, the defendant had served eight sets of requests for production of documents.

The court has reviewed MTH's requests for production and finds that they do, in fact, seek information relevant to the parties' claims and defenses. The plaintiff filed this action, presumably knowing that the defendant would defend the action and would be entitled to conduct discovery. Considering the very subject matter of this case, the admittedly broad scope of the defendant's inquiries is hardly unexpected or inappropriate. The court, therefore, declines the plaintiff's invitation to quash all of the defendant's requests for production of documents.

**D. Depositions of John C. Kenefick and Mary McAuliffe**

The record shows that plaintiff initially agreed, or appeared to agree, to produce these individuals for deposition; however, they did not appear for depositions noticed for June 20 and June 23, 2006.[3]

Mr. Kenefick was President of Union Pacific Railroad from 1971 to 1986, at which time he retired. He is 84 years old. He states by affidavit that, at no time "as president of UPRR or Chairman of Union Pacific Corporation" did he personally play "any role in the registration, policing, enforcement, or licensing of any of Union Pacific's trademarks." Filing 83-7 at ¶ 6. While that may be true, the claims and defenses of the parties to this action are not limited to the registration, policing, enforcement, or licensing of plaintiff's trademarks. It has not been suggested that Mr. Kenefick is physically or otherwise unable to appear for deposition. Apparently, Mr. Kenefick "regularly comes into the office at Union Pacific." Filing 94, Defendant's Brief at p. 10. Based on

---

[3]See Filings 19 (scheduling the Kenefick deposition for April 6, 2006); Filing 70 (rescheduling the Kenefick deposition for June 23, 2006); Filing 63 (scheduling the McAuliffe deposition for June 2, 2006); and Filing 68 (rescheduling the McAuliffe deposition for June 20, 2006).

the parties' submissions, I am persuaded that Mr. Kenefick is likely to have discoverable information and that his deposition should be taken.[4]

Ms. McAuliffe is the Vice President of External Relations for Union Pacific Corporation. She states in her affidavit (Filing 83-8) that she does not possess unique, personal knowledge of relevant facts and has played no role in the design, registration, policing, enforcement, or licensing of any of the plaintiff's trademarks. In response, MTH offered documents strongly suggesting that Ms. McAuliffe does, in fact, have unique, personal knowledge of facts relevant to the claims and defenses asserted in this case. She will be required to appear for deposition.

### E. The Rule 30(b)(6) Deposition

MTH has served notices of plaintiff's deposition upon oral examination of the persons designated by plaintiff pursuant to Fed. R. Civ. P. 30(b)(6). *See* Filings 45 & 69. The deposition notices advised that MTH would inquire on 14 topics of discussion. Plaintiff contends that, due to the breadth and depth of information sought, "the noticed topics are neither reasonable or known to UPRR." Filing 104 at p. 7.

Rule 30(b)(6) allows a party to name a corporation as a deponent. The rule requires the requesting party to "describe with reasonable particularity the matters on which examination is requested." The corporate deponent must then "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.... The persons so designated shall testify as to matters known or reasonably available to the organization." In *Prokosch v. Catalina*

---

[4] During the a status conference with the court on August 3, 2006, the parties agreed that the deposition of Mr. Kenefick would not be taken until mediation is completed.

*Lighting, Inc.*, 193 F.R.D. 633 (D. Minn. 2000), Magistrate Judge Erickson provided a thoughtful and thorough analysis of the parties' burdens and obligations under Rule 30(b)(6):

> "Corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Starlight Intern, Inc. v. Herlihy,* 186 F.R.D. 626, 639 (D. Kan. 1999), citing *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D. Neb. 1995). "[I]f it becomes obvious during the course of a deposition that the designee is deficient, the [organization] is obligated to provide a substitute." *Dravo Corp. v. Liberty Mut. Ins. Co.,* supra at 75. Having surveyed the pertinent case authorities, we are satisfied that the burdens imposed by Rule 30(b)(6) are as taxing as they are mutually beneficial. Since a corporation can only act through its employees, directors and agents, the potential thrives for an inquiring party to be bandied, from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding upon that corporation.
>
> On the other hand, a corporation should not be confronted with a seemingly endless sequence of depositions which necessarily interfere with the capacity of its officers and employees to properly discharge their employment duties, and which impose substantial financial costs. See, *Advisory Committee Notes* to 1970 Amendments to Rule 30(b)(6); *Protective Nat. Ins. v. Commonwealth Ins.,* 137 F.R.D. 267, 278 (D. Neb. 1989), quoting *Cates v. LTV Aerospace Corp.,* 480 F.2d 620, 624 (5th Cir. 1973).
>
> Accordingly, to allow the Rule to effectively function, the requesting party must take care to designate, ***with painstaking specificity***, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. Correlatively, the responding party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters." *Protective Nat. Ins. v. Commonwealth Ins.,* supra at 278, quoting *Mitsui & Co. v. Puerto Rico Water Resources Authority,* 93 F.R.D. 62, 67 (D.P.R.1981); *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D. Neb. 1995). As

>   expressed by the Court, in *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C. 1989), once notified as to the reasonably particularized areas of inquiry, the "corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation."
>
>   By requiring the responding party to produce a witness who is capable of testifying as "to matters known or reasonably available to the organization," the Rule makes plain its preference that a party not subvert the beneficial purposes of the Rule by simply incanting that no witness is available who personally has direct knowledge concerning all of the areas of inquiry. *Dravo Corp. v. Liberty Mut. Ins. Co.,* supra at 75-76; *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.1996) ("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers."), aff'd, 166 F.R.D. 367 (M.D.N.C. 1996).  If need be, the responding party "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *United States v. Taylor,* supra at 362.  Any other interpretation of the Rule would allow the responding corporation to "sandbag" the depositional process "by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *Id.* at 362.  We understand that the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored.

*Prokosch*, 193 F.R.D. at 638-39 (emphasis added).

I have reviewed the list of topics designated by MTH which is, indeed, painstakingly specific.  I can identify no topic on the list that is inappropriate, and it would be quite remarkable if no person could be found at Union Pacific who had pertinent knowledge, or access thereto, concerning the matters listed.  The court sees no reason, considering the magnitude of the claims and issues presented in this case, why plaintiff should be exempted from providing the requested information.

-11-

## CONCLUSION

As this court has previously opined, the issues presented in this particular lawsuit require the examination of the plaintiff's conduct over a substantial time period and will require an unusually broad scope of discovery. While MTH has served a very large number of document requests, the materials sought appear to be relevant to the parties' claims and defenses. It would be highly inappropriate for the court to simply "quash" all the document requests at this late date, particularly after the plaintiff already agreed to produce many of the requested documents. Nor will the court, at this time, prohibit MTH from continuing to request relevant documents.

The depositions of John C. Kenefick and Mary McAuliffe will be taken. Mr. Kenefick's deposition will not be taken until mediation is completed. Ms. McAuliffe's deposition will be taken before mediation commences. The court is confident that Mr. Kenefick will be treated with courtesy by opposing counsel and that a deposition can be scheduled so as to avoid any significant disruption of Ms. McAuliffe's job-related responsibilities.

Finally, the court recognizes that it will be difficult, expensive, and time-consuming for Union Pacific to comply with the Rule 30(b)(6) deposition notice; however, Union Pacific filed this lawsuit and should be prepared to provide discovery of this nature, as the listed topics are not inappropriate or unreasonable in the context of this particular litigation.

## ORDER

**IT IS ORDERED**:

1. PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND/OR MOTION TO QUASH DEFENDANT'S NOTICES TO TAKE DEPOSITIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS [82] is denied.

2. Defendant's MOTION FOR LEAVE TO FILE A SURREPLY [105] is denied.

    3.   Defendant's MOTION FOR LEAVE TO SUBMIT ADDITIONAL EVIDENCE [119] is denied.

    4.   The court finds that the circumstances of this incident would make an award of expenses unjust and declines to award costs or fees to either party.  *See* Fed. R. Civ. P. 37(a)(4)(B).

**DATED August 10, 2006.**

                **BY THE COURT:**

                **s/ F.A. Gossett**
                **United States Magistrate Judge**